Norman H. RACHERBAUMER,
Appellant,

v.

Sharon M. RACHERBAUMER,
Respondent.

No. 61302.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 10, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Dec. 23, 1992.

Application to Transfer Denied
Jan. 26, 1993.

David L. Baylard, Robert Garza, Union, for appellant.

Edward A. Stierberger, Timothy J. Melenbrink, Union, for respondent.

CRIST, Judge.

Father appeals order of trial court in dissolution decree to pay child support to his adult mentally incapacitated son. We affirm.

Norman Racherbaumer (Father) and Sharon Racherbaumer (Mother) were first married in October of 1965. That marriage ended in divorce in April of 1971. During their first marriage, their son Brian was born on February 18, 1969. Father and Mother were married again on July 4, 1973. During this marriage, their son Darian was born on September 30, 1973. Darian is currently attending college.

At the time of trial, Brian was 22 years old and unmarried. Brian is mentally incapacitated. However, he graduated from high school in a special education program. He requires help in his daily activities, such as shaving, transportation, and cooking. He works at a sheltered workshop where he earns approximately $319.58 per month. Based on a determination he is "totally disabled," he receives Social Security payments of $178.90 per month, less $30 for Medicare payments. He also receives Supplemental Security income amounting to $128 per month, but this amount varies depending upon his monthly income. Pursuant to government regulation, Brian must contribute his share of household expenses. He pays $350 per month to Mother. The balance, $246.48, is used by Brian for his clothes, bedroom furnishings, entertainment, and personal needs.

On November 15, 1991, the trial court entered its findings of fact, conclusions of law, and decree of dissolution. The trial court found Father's 1991 gross income was $4040.26 per month, and Mother's 1991 gross income was $2192.67 per month. The court ordered Father to pay $600 in child support for Brian and Darian, approximately $110 less than the presumed child support amount per Rule 88 and Form 14. The court found the presumed amount un-

just and inappropriate because of Brian's $350 monthly contribution to the household expenses. The court did not apportion the $600 between Brian and Darian.

On December 3, 1991, Father filed a motion for new trial alleging the trial court erred in awarding child support for the adult child Brian and in awarding lump sum child support. On December 16, 1991, the trial court denied Father's motion on those points. Father appealed.

Father first alleges the trial court was without jurisdiction to award child support for his mentally incapacitated son Brian because Brian was over the age of 21 at the time of the trial. We reject Father's contention.

■ A parent has a duty to support an unmarried, insolvent, mentally handicapped adult child. *Fower v. Fower Estate*, 448 S.W.2d 585, 586[1] (Mo.1970); *Cole v. Estate of Armstrong*, 707 S.W.2d 459, 462[13] (Mo.App.1986). However, prior to 1988, this duty was owed to the child, not the custodial parent. *Cole*, 707 S.W.2d at 463[15]. The child had to either bring a separate action to establish the duty or intervene in the dissolution decree to give the trial court jurisdiction. *Id.; Trimble v. Trimble*, 750 S.W.2d 519, 520[1] (Mo.App. 1988). A dissolution proceeding to which the child was not a party was an improper forum to consider a noncustodial parent's duty to support an adult child. *Eckenroed v. Eckenroed*, 668 S.W.2d 104, 105[1] (Mo. App.1984); *Faulkner v. Faulkner*, 559 S.W.2d 545, 546–47[2] (Mo.App.1977).

In 1988, the legislature amended the child support statute, § 452.340. That statute now provides the obligation to support a child generally terminates when that child reaches age 18. § 452.340.3(5), RSMo.Supp.1991. In addition, the legislature added subsection four, which states "[i]f the child is physically or mentally incapacitated from supporting himself and insolvent and unmarried, the court may extend the parental support obligation past the child's eighteenth birthday." § 452.-340.4. This amendment adopted the com-

mon law duty of a parent to support his or her unmarried, insolvent, mentally handicapped adult child. Further, it added a means through which this duty could be enforced by allowing such support orders to be entered in a dissolution proceeding. A separate suit by the child would no longer be needed.

■ Since this amendment, Missouri courts have upheld orders which continued child support for adult mentally incapacitated children when an original support order had been entered prior to the child reaching the age of majority. *See Heider v. Heider*, 822 S.W.2d 446, 447[2] (Mo.App. 1991); *D.R.S. v. P.W.S.*, 817 S.W.2d 615, 619[4] (Mo.App.1991). However, whether a court can order child support under § 452.-340.4 for an *adult* mentally incapacitated child who attained the age of majority prior to entry of the dissolution decree is a case of first impression. Father asserts that § 452.340.4 does not give a trial court jurisdiction to enter original awards of child support for adult mentally incapacitated children. Father points to the language of § 452.340.4, which states that the court may *"extend* the parental support obligation past the child's eighteenth birthday." § 452.340.4 (emphasis added). He asserts that the word "extend" means "to cause to be longer" and implies that there must be a pre-existing minor child support order before the court can order child support for an adult. We reject Father's assertions.

■ When examining the meaning of a statute, the primary role of a court is to ascertain the intent of the legislature from language used and to give effect to that intent if possible. *Trailiner Corp. v. Director of Revenue*, 783 S.W.2d 917, 920[1] (Mo. banc 1990); *Thomas v. Missouri Dept. of Social Services*, 805 S.W.2d 286, 288[4] (Mo.App.1991). To determine legislative intent, the court must consider words used in the statute according to their plain and ordinary meaning as derived from a dictionary. *Abrams v. Ohio Pacific Express*, 819 S.W.2d 338, 340[2] (Mo. banc 1991).

The word "extend" has multiple definitions. Webster's Dictionary defines "extend" to mean not only "to cause to be longer," but also "to make available," and "to increase the scope, meaning, or application of." Webster's Ninth New Collegiate Dictionary 439 (9th ed. 1991). In § 452.-340.4, "extend" could mean that a pre-existing child support order must be in place before a divorce court can award child support for an adult mentally incapacitated child. However, "extend" could also mean that the divorce court has jurisdiction to make child support available or increase the scope of child support for an adult mentally incapacitated child. Either definition could be within the legislative intent. Due to the ambiguity in the meaning, we must turn to the rules of statutory construction. *Abrams*, 819 S.W.2d at 340[3].

In construing § 452.340.4, we must presume that the legislature did not intend to enact an absurd law, and we must favor a construction that avoids unjust or unreasonable results. *State ex rel. McNary v. Hais*, 670 S.W.2d 494, 495[1] (Mo. banc 1984). We believe it is an unreasonable construction if the divorce court has jurisdiction only over a portion of the mentally incapacitated children when the common law duty is owed to *all* such children regardless of age. It is also unjust to provide the security of the child support laws to one adult mentally incapacitated child but not another simply because of the period in time their parents were divorced. Therefore, we believe that the legislature must have intended to grant jurisdiction to the divorce court to award child support for *all* mentally incapacitated children regardless of age. Otherwise, the statute is ineffectual.

Furthermore, we believe that the language of the Alaska Supreme Court on this issue is compelling. It noted that "in recognition that the use of a separate lawsuit is a needless waste of time and money, the modern trend ... is to recognize the jurisdiction of the divorce court to order support for disabled adult children." *Streb v. Streb*, 774 P.2d 798, 800[2] (Alaska 1989) and cases cited therein; *See also, Kinder v. Schlaegel*, 185 W.Va. 56, 404 S.E.2d 545

(1991). In addition, one of the primary purposes of the child support statute is "to obviate the expense and delay of independent actions." *Lodahl v. Papenburg,* 277 S.W.2d 548, 551[2] (Mo.Div. 1 1955). Clearly, Brian could prevail in a separate lawsuit to establish Father's duty of support. The issue has already been litigated. In the interest of judicial expediency, we hold § 452.340 grants the trial court jurisdiction to enter awards of support in a dissolution decree for adult mentally incapacitated children who attained the age of majority prior to entry of the dissolution decree.

■ Father also asserts that even if the trial court had jurisdiction to order child support for Brian, it erred in awarding it because evidence established Brian was financially self-supporting. However, Father relies on the wrong standard. Section 452.340.4 states that the standard is "insolvency." Insolvency is defined as " 'the inability to pay debts as they become due in the ordinary course of business.' " *D.R.S.,* 817 S.W.2d at 618[3], *citing Adams v. Richardson,* 337 S.W.2d 911 (Mo.1960). Brian earns approximately $319.58 per month at his job and receives social security payments of approximately $276.90 per month for a total monthly income of $596.48. He is required by government regulation to contribute $350 to household expenses. There is little doubt that Brian could not rent a home, buy food, or pay utilities and other household expenses on his monthly income. While Brian may be self-supporting if he remains in the home with his mother, there is no evidence that he could support himself on his own or that he saves any of his monthly income. From the evidence presented at trial, the trial court could reasonably conclude that Brian was insolvent.

■ Father further asks this court to remand the case back to the trial court for it to allocate the child support between the two children. However, the trial court has not erred in awarding lump sum child support with no allocation. No statute or case law requires such allocation and lump sum awards are not an abuse of discretion.

*Mueller v. Mueller,* 782 S.W.2d 445, 447–48[3] (Mo.App.1990).

Judgment affirmed.

AHRENS, P.J., and REINHARD, J., concur.